## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**WILLIE R. SMITH,**                              **CASE NO.: 3:18-cv-1459-J-34MCR**

     **Plaintiff,**

**v.**

**CITY OF ATLANTIC BEACH,**

     **Defendant.**

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, WILLIE R. SMITH, hereby sues Defendant, CITY OF ATLANTIC BEACH, and alleges:

## NATURE OF THE ACTION

1.     This is an action brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.

2.     This action involves claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.  This case was removed to this Court by the Defendant.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, WILLIE R. SMITH, has been a resident of the State of Florida and employed by Defendant.  Plaintiff is a member of a protected class because of his race and because he reported unlawful employment practices and filed charges of discrimination, he has been retaliated against thereafter.

4.     At all times pertinent hereto, Defendant, CITY OF ATLANTIC BEACH, has been organized and existing under the laws of the State of Florida.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant has been Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.     Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC.  This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6.     Plaintiff began his employment with Defendant in August 2014 as a Building Maintenance Tech and currently holds the position of Parks and Buildings Maintenance Supervisor.

7.     During his employment with Defendant, Plaintiff has been and continues to be treated differently than similarly situated white employees with respect to the terms and conditions of his employment, held to a different standard because of his race (black) and because he reported unlawful discrimination and has been retaliated against thereafter.

8.     The mistreatment has come at the hands of specifically but not limited to HR Director Cathy Berry and Deputy Public Works Director Scott Williams.  Berry and Williams are both white.  There were two departments in Public Works, i.e., (1) Parks and Recreation and (2) Streets.  Plaintiff worked primarily in the Parks and Recreation Department.

9.     Beginning approximately three weeks after he was hired in 2014, Plaintiff began to notice that all or almost all of the heavy labor assignments were given to African American

employees in the Parks and Recreation Department of the Defendant.  The comment was made sometime in 2015 by Chris Hoffman, Parks and Recreation Supervisor at that time, that "ya'll are big boys and you should be able to handle it." There were two white and five black employees, all in the same positions at the time the heavy equipment assignments were made. This disparity in work assignments occurred frequently and at least two times per week in the 2014 and 2015 time period.

10.     Plaintiff also noticed in the 2014 and 2015 time period that the supervisor, Chris Hoffman, and the Public Works Director, Doug Layton, were having early morning meetings with the white employees of Parks and Recreation but not the black employees.  This occurred two or three times per week from 2014 through the latter part of 2015. There was no legitimate reason known to Plaintiff that black employees were excluded or not invited to participate in these meetings.

11.     In early 2016, Doug Layton was terminated.  Scott Williams became the Interim Director of Public Works at some point thereafter for a short time. He had been in the Deputy Director of Public Works since he was hired in 2015, a position sought by Plaintiff as discussed below.

12.     There was originally a competitive selection for the Deputy Director position that both Plaintiff and Scott Williams, who is white, applied for.  Although the rules of the Defendant required that all of the internal applicants within the City who were minimally qualified for positions were to be interviewed, Plaintiff, who was deemed "minimally qualified" for the Deputy Director position, was never interviewed.  Scott Williams received the position after Defendant violated its rules regarding interviews for the position.  When Plaintiff questioned the

HR Director, Cathy Berry, as to why he was not interviewed, her response was that she did not

know what the problem was and that he was "only minimally qualified".   Being "minimally

qualified", however, was the requirement for being interviewed.   Ms. Berry also incorrectly told

Plaintiff that he only had eight (8) days to contest the hiring of Williams but the City policy said

he had ten (10) days from the date that Williams was hired to contest the hiring.   Although

Plaintiff was outside that ten day period, he still told Ms. Berry that the policy had been violated.

No action was taken at all to correct this violation.   Plaintiff was substantially more qualified

than Mr. Williams for the Deputy Director position.

13.    After Williams was hired into the Deputy Public Works Director position despite

the violation of Defendant's own rules in 2015, after Mr. Layton, the Director, was fired, and

after a short stint in the position by another person, Don Jacobowhic, who is white, Mr. Williams

was placed into the Interim Director Position for a period of approximately one to two months.

Thereafter, Williams was promoted into the permanent Director of Public Works position

without the position being advertised. The Director position required an engineering degree.

Prior occupants of the position, Don Jacobowhic and Doug Layton, were both engineers.  Scott

Williams was not an engineer and was not qualified for the position and neither was Plaintiff

because he does not have an engineering degree. But Plaintiff was never given the chance to fill

the Director position as it was not competitively filled.   Plaintiff was qualified for the Director

position when it was filled by Williams.

14.    In 2015, Plaintiff also applied for an open and available position as Code

Enforcement Officer.   Ms. Debbie White, who is white, retired from that position.   Plaintiff was

again determined to be "minimally qualified" for the position and notwithstanding the

Defendant's policy recited above about "minimally qualified" internal applicants being interviewed, Plaintiff was not interviewed.  A white applicant from outside the Defendant City, John Marqee, was hired rather than Plaintiff, who never received an interview for the position, again a policy violation.

15.    In October 2015, Plaintiff filed a charge of discrimination with the EEOC against Defendant for race discrimination largely relating to the promotions identified above, being excluded from meetings and being treated differently than white employees regarding his and other black employees job duties, under EEOC # 510-2015-04864.   That charge remained pending until 2018.

16.    While Plaintiff's charge of discrimination was pending and after John Marqee had been in his position for around six months, in 2016, Mr. Marquee left employment with Defendant but his Code Enforcement position was not advertised.  Instead, Defendant brought Debbie White back out of retirement to replace Marqee in his Code Enforcement position.  Then, later in 2016, Ms. White began training a white female employee, Toni (lnu), who had been working as a Clerk to replace Ms. White as the Code Enforcement Officer.  Ms. Toni became the de facto Code Enforcement Officer although she was not officially placed into that position until 2017, as discussed below.

17.    While Plaintiff's charge of discrimination was still pending in late 2016, Plaintiff and Jim Phols, who is white, applied for an open Streets and Stormwater position. Plaintiff was significantly more qualified for the position but Jim Phols received the position instead of Plaintiff.  When Plaintiff asked why he did not get the position, he was told by then Public Works Director, Don Jacobowhic, that Phols was more qualified.  This was false as this was only

Phols second job and he was no more than 32 years of age. Plaintiff is 59 years of age and his qualifications were much greater than Phols.

18.     While Plaintiff's charge was still pending in 2017, Chris Hoffman was terminated as the supervisor over Parks and Recreation.  Plaintiff applied for this position and was promoted to the supervisory position in May 2017.   Plaintiff was told at the time that he was overwhelmingly qualified for the position.   However, after Plaintiff was placed into this supervisory position, he was told by Scott Williams and HR Director Cathy Berry that he would be a working supervisor (which was put into his position description), which was not required of Hoffman.  Defendant also removed the two white employees from Plaintiff's department which meant that the only employees under Plaintiff's supervision were black.

19.     The loss of these employees put a strain on Plaintiff's department and his ability to complete his tasks. The two white employees were moved to other positions within the Defendant. One such white employee, Jim Phols, was promoted from a Pay Grade 19 to a Pay Grade 20, and a position was created for the other one as a Beach Ranger II.  The Beach Ranger position, filled by Chris Coddington, appears to have been fabricated in order to facilitate changes in pay structures and Phols, in his new position, is essentially being paid for duties that have been and continue to be completed by Plaintiff. In addition, Defendant's creation of the Beach Ranger position has essentially been a guise which improperly allows funds to be drawn from the budget for Plaintiff's department and spent for Coddington's position, although Coddington reports to Jim Phols, who reports directly to the Director of Public Works, just like Plaintiff.  But the money for at least the Beach Ranger position comes from Plaintiff's budget.

20.     After Plaintiff received the Supervisor position, he was given the telephone that was previously used by Chris Hoffman.  The phone was not cleansed before giving it to Plaintiff and Plaintiff noticed on the phone that Hoffman had been taking pictures and videos of Plaintiff while he was working.

21.     Moreover, when Plaintiff was promoted to Parks and Recreation and Buildings Maintenance Supervisor (a new position title created exclusively for Plaintiff with the added "Buildings Maintenance" in the title), he also was given additional job duties in building maintenance but was he was not given any increase in pay.  Chris Hoffman did not have the responsibility for building maintenance when he was in the supervisor position.  Plaintiff' also started at the base pay for the Supervisor's position although he had extensive experience. In contrast, the Police Chief, who is white and had experience, started higher than base pay for his position. Plaintiff's starting pay for the Supervisor position was, upon information and belief, lower than the pay Chris Hoffman received even through Plaintiff had the additional responsibility of building maintenance with no additional pay.

22.     Since being in the Supervisor position, Plaintiff has also been excluded from participating in the budget process for Parks and Recreation although Chris Hoffman was allowed to participate and sit in on budget meetings, which Plaintiff has not been asked to do.

23.     After Plaintiff received the Supervisor position in May 2017, Defendant refused to schedule Plaintiff for training.  Chris Hoffman was scheduled by the Defendant to attend training but for Plaintiff to obtain training, he had to schedule it himself.  Defendant has also discouraged Plaintiff from helping anyone else within the Defendant when others have been struggling or needed help.

24.     After Plaintiff was placed into the Supervisor position, in 2017, after advertising for the position, both the Code Enforcement and Clerk positions, held by Debbie White and Ms. Toni, were advertised by Defendant, which is either a coincidence or shows Defendant had already unofficially chosen Ms. Toni, who was in the Clerk position, for the Code Enforcement position and advertised the position only as a formality. By delaying the advertisement for the Code Enforcement position, Plaintiff could not apply for it again and it was only filled after Plaintiff received the Supervisor position. Ms. Toni was officially selected for the Code Enforcement position approximately four to five months after Plaintiff's promotion to the Supervisor position.

25.     Since Plaintiff filed the charge of discrimination in 2015, he has been an outcast. White coworkers do not talk to and actual shy away from him.  Plaintiff has not been invited to lunches in which white employees only are invited.   Plaintiff was also told not to talk to another African American employee, Timothy Johnson, who also had filed a charge of discrimination against the Defendant.

26.     In addition to filing his original charge, Plaintiff has continued to report discrimination and retaliation including specifically without limitation through written correspondence to Susan Diaz of the EEOC on June 14, 2017, to HR Director Cathy Berry on August 19, 2017, and again to Diaz on March 3, 2018.  Plaintiff filed a second charge of discrimination in March 2018.

27.     Since the filing of the additional charge of discrimination, on June 18, 2018, Plaintiff set a meeting with Director Scott Williams, the Union Stewart Eric Williams, and an employee Plaintiff had hired named Justin (lnu), who is white.  The purpose of the meeting was

for Plaintiff to provide coaching and criticism to Justin, as his employment had not been working out as was in need of improvement.   In this meeting, Director Scott Williams stated to Justin something to the effect of, "Don't disobey them because they're black," referring to Plaintiff and Eric Williams, who is black like Plaintiff.   Plaintiff immediately excused himself from this meeting.   Justin quit and, when Plaintiff called him approximately one week later, he told Plaintiff he did not want to be a part of the good ole boy system and that he took issue with the blatant racism at the workplace.

28.    Despite Plaintiff's repeated complaints to Defendant and the EEOC, the disparate treatment and retaliation are ongoing.

29.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.   Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION

30.    Paragraphs 1-12 and 26-29 are re-alleged and incorporated herein by reference.

31.    This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.   This is a claim for disparate treatment and not for a hostile work environment.   This count is pled in the alternative.

32.    Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.   Specifically, Plaintiff was the victim of race discrimination and suffered the following adverse actions:   Defendant failed to interview and promote Plaintiff:

9

despite his qualifications for the position, Plaintiff was not interviewed nor selected for the competitively filled position of Deputy Director of Public Works that Scott Williams, who is white, received, which position became open in 2015 as alleged in paragraph 12 above, which position would have been a promotion for Plaintiff.

33.     Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

34.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

35.     The discrimination complained of in paragraph 12 above has affected and continues to affect a term, condition, or privilege of Plaintiff's employment with Defendant in that Plaintiff was not promoted. The events set forth herein have led, at least in part, to adverse actions against Plaintiff including the failure to promote Plaintiff as stated in paragraph 12 above.

36.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

37.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT II
## RACE DISCRIMINATION

38.     Paragraphs 1- 11, 13, 26-29 are re-alleged and incorporated herein by reference.

39.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.  This is a claim for disparate treatment and not for a hostile work environment.  This count is pled in the alternative.

40.     Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.  Specifically, Plaintiff was the victim of race discrimination and suffered the following adverse actions:  Defendant failed to interview and promote Plaintiff: despite his qualifications for the position, Plaintiff was not interviewed nor selected for the Director of Public Works position in 2015, as alleged in paragraph 13 above, that Scott Williams received without the position being competitively filled, which position would have been a promotion for Plaintiff.

41.     Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff

11

or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

42.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

43.     The discrimination complained of in paragraph 13 above has affected and continues to affect a term, condition, or privilege of Plaintiff's employment with Defendant in that he was not promoted.  The events set forth herein have led, at least in part, to adverse actions against Plaintiff including the failure to promote Plaintiff as stated in paragraph 13 above.

44.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

45.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT III
## RACE DISCRIMINATION

46.     Paragraphs 1-11, 14, 26-29 are re-alleged and incorporated herein by reference.

12

47.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq.*; and 42 U.S.C. § 1981a.  This is a claim for disparate treatment and not for a hostile work environment.  This count is pled in the alternative.

48.     Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.  Specifically, Plaintiff was the victim of race discrimination and suffered the following adverse actions:  Defendant failed to interview and promote Plaintiff:  in 2015, Plaintiff was not interviewed nor selected to fill an open and available competitively filled Code Enforcement Officer position that he was highly qualified for, as alleged in paragraph 14 above, that a white applicant, John Marqee received, which position would have been a promotion for Plaintiff.

49.     Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

50.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

51.     The discrimination complained of in paragraph 14 above has affected and continues to affect a term, condition, or privilege of Plaintiff's employment with Defendant in that Plaintiff was not promoted.  The events set forth herein have led, at least in part, to adverse actions against Plaintiff including the failure to promote Plaintiff as stated in paragraph 14 above.

52.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

53.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## RACE DISCRIMINATION

54.     Paragraphs 1-11, 16, 24, 26-29 are re-alleged and incorporated herein by reference.  This count is pled in the alternative.

55.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.  This is a claim for disparate treatment and not for a hostile work environment.

56.     Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.  Specifically, Plaintiff was the victim of race discrimination and

14

suffered the following adverse actions:  Defendant failed to interview and promote Plaintiff:  in 2016, after John Marqee left the Code Enforcement Officer position as discussed in paragraphs 16 and 24 above, that position opened again but was not advertised; instead, Defendant placed a white employee, Debbie White, into that position and she began training a white female employee for the position rather than Plaintiff or allowing him to apply for the position and the white trainee, Toni (lnu), was permanently placed into the position in 2017.  Defendant thus failed to allow Plaintiff to interview for and be promoted into this position.

57.     Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

58.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

59.     The discrimination complained of in paragraphs 16 and 24 above has affected and continues to affect a term, condition, or privilege of Plaintiff's employment with Defendant in that Plaintiff was not promoted.  The events set forth herein have led, at least in part, to adverse actions against Plaintiff including the failure to promote Plaintiff as stated in paragraph 16 and 24 above.

15

60.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

61.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT V
## RACE DISCRIMINATION

62.     Paragraphs 1-11, 17, 26-29 are re-alleged and incorporated herein by reference.

63.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.  This is a claim for disparate treatment and not for a hostile work environment.  This claim is pled in the alternative.

64.     Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.  Specifically, Plaintiff was the victim of race discrimination and suffered the following adverse actions:  Defendant failed to interview and promote Plaintiff:  in late 2016, Plaintiff and another applicant, Jim Phols, who is white, applied for an open and available position in the Streets and Stormwater division of Public Works within Defendant City which Phols received, despite Plaintiff's superior qualifications, as alleged in paragraph 17 above, which position would have been a promotion for Plaintiff.

16

65.      Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

66.      In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

67.      The discrimination complained of in paragraph 17 above has affected and continues to affect a term, condition, or privilege of Plaintiff's employment with Defendant in that Plaintiff was not promoted.  The events set forth herein have led, at least in part, to adverse actions against Plaintiff including the failure to promote Plaintiff as stated in paragraph 17 above.

68.      Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

69.      As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have

occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

**COUNT VI**
**RACE DISCRIMINATION**

70.     Paragraphs 1-11, 18-23, 25-29 are re-alleged and incorporated herein by reference.  This count is pled in the alternative.

71.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes; 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981a.  This is a claim for disparate treatment and not for a hostile work environment.

72.     Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated employees of Defendant who are white as set forth in part above and herein.   Specifically, Plaintiff was the victim of race discrimination and suffered the following adverse actions:  in May 2017, Plaintiff applied for and received an open and available supervisor position in Parks and Recreation; however, he began in this position at the base pay for a position that he was exceedingly qualified for.  In contrast, at least one white employee was started higher than base pay for his position even though he was equally or less qualified for his position at the time he began in that position than Plaintiff when Plaintiff was promoted into his position.

73.      Plaintiff's duties were also different than the duties the white employee had who held the position before him.  Specifically, he had job duties added to the position that the white employee did not have to perform without any increase in pay.  Additionally, the only two white employees who were to be under Plaintiff's supervision were removed and placed into newly created positions, resulting in Plaintiff only supervising black employees and having fewer

employees to perform the same or additional job duties that the former white supervisor had to perform, as alleged in paragraphs 18, 19 and 21 above.

74.     Since Plaintiff has been in the supervisor position, the salary for at least one of the white employees who was removed from under his supervision is still being funded from Plaintiff's budget which means that Plaintiff does not have money in his budget to replace at least one needed position, without which a stain has been put on the other workers and Plaintiff, as alleged in paragraph 19 above.

75.     Since Plaintiff has been in the supervisor position, he has been excluded from budget meetings, denied training, discouraged from helping others within the Defendant, has been an outcast amongst his coworkers and told not to talk to another black employee as alleged in paragraphs 22, 23, and 25 above.

76.     Plaintiff is thus treated differently than his white predecessor and white coworkers who hold comparable positions to that held by Plaintiff within the Defendant and has suffered adverse employment actions as described in this count.

77.     Defendant is liable for the differential treatment of Plaintiff referenced herein because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and has failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff referenced herein as more fully set forth herein because it allowed the differential treatment and participated in same.

78.     In essence, the actions of agents of Defendant, which were each condoned and

ratified by Defendant, were of a race-based nature and in violation of the statutes referenced above.

79.     The discrimination complained of as alleged in this count has adversely affected Plaintiff's ability to perform his job duties with Defendant in that he has fewer staff to perform the same job duties his white counterpart performed.   He is making less than his white predecessor.   He is excluded from meetings and denied training necessary to perform his job duties, ostracized at work and restricted from taking to another black employee at work.   These actions are adverse to Plaintiff and his ability to perform his job duties.   He has been treated differently as compared to his white counterparts and coworkers.

80.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of the statutes referenced above.

81.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.   These damages have occurred in the past, are permanent and continuing.   Plaintiff is entitled to injunctive/equitable relief.

## COUNT VII
## RETALIATION

81.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

82.     Defendant is an employer as that term is used under the applicable statutes referenced above.   This count is pled in the alternative.

83.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

84.     The foregoing unlawful actions by Defendant were purposeful.

85.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

86.      Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.   The events that Plaintiff maintains are adverse employment actions supporting his retaliation claim in this count after his reports of discrimination in April 2015 are the same as the events constituting the acts of race discrimination and are pled alternatively. Specifically, Plaintiff suffered adverse employment actions after he reported discrimination as follows:   Defendant failed to interview and promote Plaintiff:   despite his qualifications for the position, Plaintiff was not interviewed nor selected for the competitively filled position of Deputy Director of Public Works that Scott Williams, who is white, received, which position became open in 2015 as alleged in paragraph 12 above, which position would have been a promotion for Plaintiff.    The failure to promote Plaintiff is an adverse employment action causally connected to Plaintiff's reports of race discrimination.

87.     Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter in that he was not promoted into the position referenced in paragraph 12 above.   There is a causal connection

between the reporting of the unlawful employment practices and the adverse employment action taken thereafter referenced in paragraph 12 above.

88.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT VIII
## RETALIATION

89.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

90.     Defendant is an employer as that term is used under the applicable statutes referenced above.  This count is pled in the alternative.

91.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

92.     The foregoing unlawful actions by Defendant were purposeful.

93.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

94.     Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.  The events that Plaintiff maintains are adverse employment actions supporting his retaliation claim in this count after his reports of discrimination in April 2015 are the same as the events constituting the

acts of race discrimination and are pled alternatively. Specifically, Plaintiff suffered adverse employment actions after he reported discrimination as follows:  Defendant failed to interview and promote Plaintiff:  despite his qualifications for the position, Plaintiff was not interviewed nor selected for the Director of Public Works position in 2015, as alleged in paragraph 13 above, that Scott Williams received without the position being competitively filled, which position would have been a promotion for Plaintiff.  The failure to promote Plaintiff is an adverse action causally connected to his reports of race discrimination.

95.     Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter in that he was not promoted into the position referenced in paragraph 13 above.  There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter referenced in paragraph 13 above.

96.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT IX
## RETALIATION

97.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

98.     Defendant is an employer as that term is used under the applicable statutes referenced above.  This count is pled in the alternative.

99.     The foregoing allegations establish a cause of action for unlawful retaliation after

Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

100.     The foregoing unlawful actions by Defendant were purposeful.

101.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

102.     Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.   The events that Plaintiff maintains are adverse employment actions supporting his retaliation claim after his reports of discrimination in April 2015 are the same as the events constituting the acts of race discrimination and are pled alternatively. Specifically, after Plaintiff reported discrimination, Defendant failed to interview and promote him: in 2015, Plaintiff was not interviewed nor selected to fill an open and available competitively filled Code Enforcement Officer position that he was highly qualified for, as alleged in paragraph 14 above, that a white applicant, John Marqee received, which position would have been a promotion for Plaintiff.   The failure to promote Plaintiff is an adverse employment action causally connected to Plaintiff's reports of race discrimination.

103.     Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter in that he was not promoted into the position referenced in paragraph 14 above.   There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter as referenced in paragraph 14 above.

104.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

**COUNT X**
**RETALIATION**

105.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

106.     Defendant is an employer as that term is used under the applicable statutes referenced above. This count is pled in the alternative.

107.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

108.     The foregoing unlawful actions by Defendant were purposeful.

109.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

110.     Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.  The events that Plaintiff maintains are adverse employment actions supporting his retaliation claim after his reports of discrimination in April 2015 and/or his Charge of Discrimination in October 2015 are the same as the events constituting the acts of race discrimination and are pled alternatively. Specifically, Plaintiff reported discrimination and thereafter he suffered the following adverse

actions:  Defendant failed to interview and promote Plaintiff:  In 2016, after John Marqee left the Code Enforcement Officer position as discussed in paragraphs 16 and 24 above, that position opened again but was not advertised; instead, Defendant placed a white employee, Debbie White, into that position and she began training a white female employee for the position rather than Plaintiff or allowing him to apply for the position and the white trainee, Toni (lnu), was permanently placed into the position in 2017.   Defendant thus failed to allow Plaintiff to interview for and be promoted into this position.  The failure to promote Plaintiff was an adverse action against him and an act of retaliation following his reports of discrimination and/or the filing of his charge of discrimination.

111.     Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter in that he was not promoted into the position referenced in paragraphs 16 and 24 above.   There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter as referenced in paragraphs 16 and 24 above.

112.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT XI
## RETALIATION

113.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

114.     Defendant is an employer as that term is used under the applicable statutes

referenced above.  This count is pled in the alternative.

115.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

116.    The foregoing unlawful actions by Defendant were purposeful.

117.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

118.    Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.  The events that Plaintiff maintains are adverse employment actions supporting his retaliation claim after his reports of discrimination in April 2015 and/or his Charge of Discrimination in October 2015 are the same as the events constituting the acts of race discrimination. Specifically, after Plaintiff reported race discrimination, he was the victim of the following adverse actions:   Defendant failed to interview and promote Plaintiff: in late 2016, Plaintiff and another applicant, Jim Phols, who is white, applied for an open and available position in the Streets and Stormwater division of Public Works within Defendant City which Phols received, despite Plaintiff's superior qualifications, as alleged in paragraph 17 above, which position would have been a promotion for Plaintiff.   The failure to promote Plaintiff was an adverse action causally connected to Plaintiff's reports of discrimination and/or to the filing of his charge of discrimination.

119.    Plaintiff is a member of a protected class because he reported unlawful

27

employment practices and has been the victim of retaliation thereafter in that he was not promoted into the position referenced in paragraph 17 above.  There is a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter as referenced in paragraph 17 above.

120.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT XII
## RETALIATION

121.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

122.     Defendant is an employer as that term is used under the applicable statutes referenced above.  This claim is pled in the alternative.

123.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under the statutes referenced above.

124.     The foregoing unlawful actions by Defendant were purposeful.

125.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

126.     Plaintiff first voiced opposition to unlawful employment practices in April 2015 verbally to Defendant's Human Resources Manager.   He then filed his first Charge of Discrimination with the EEOC in October 2015 as alleged in paragraph 15 above.  The events

that Plaintiff maintains are adverse employment actions supporting his retaliation claim after his reports of discrimination in April 2015 and/or his Charge of Discrimination in October 2015 are the same as the events constituting the acts of race discrimination and are pled in the alternative. Specifically, Plaintiff suffered the following adverse actions following his reports of discrimination and/or his charge of discrimination: in May 2017, Plaintiff applied for and received an open and available supervisor position in Parks and Recreation; however, he began in this position at the base pay for a position that he was exceedingly qualified for.  In contrast, at least one white employee was started higher than base pay for his position even though he was equally or less qualified for his position at the time he began in that position than Plaintiff when Plaintiff was promoted into his position.

127.    Plaintiff's duties were also different than the duties the white employee had who held the position before him.  Specifically, he had job duties added to the position that the white employee did not have to perform without any increase in pay.  Additionally, the only two white employees who were to be under Plaintiff's supervision were removed and placed into newly created positions, resulting in Plaintiff only supervising black employees and having fewer employees to perform the same or additional job duties that the former white supervisor had to perform, as alleged in paragraphs 18, 19 and 21 above.

128.    Since Plaintiff has been in the supervisor position, the salary for at least one of the white employees who was removed from under his supervision is still being funded from Plaintiff's budget which means that Plaintiff does not have money in his budget to replace at least one needed position, without which a stain has been put on the other workers and Plaintiff, as alleged in paragraph 19 above.

129.    Since Plaintiff has been in the supervisor position, he has been excluded from budget meetings, denied training, discouraged from helping others within the Defendant, has been an outcast amongst his coworkers and told not to talk to another black employee as alleged in paragraphs 22, 23, and 25 above.

130.    Plaintiff is thus treated differently than his white predecessor and white coworkers who hold comparable positions to that held by Plaintiff within the Defendant.

131.    Plaintiff is a member of a protected class because he reported unlawful employment practices and suffered adverse actions thereafter.  The retaliation complained of as alleged in this count has adversely affected Plaintiff's ability to perform his job duties with Defendant in that he has fewer staff to perform the same job duties his white counterpart performed.  He is making less than his white predecessor.  He is excluded from meetings and denied training necessary to perform his job duties, ostracized at work and restricted from taking to another black employee at work.  These actions are adverse to Plaintiff and his ability to perform his job duties.  He has been treated differently as compared to his white counterparts and coworkers.

124.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801

<u>James Roscoe Tanner</u>
James Roscoe Tanner [FBN 637246]
Tanner Law Group, LLC
Post Office Box 260156
Tampa, Florida 33685
Email: jrt@jimtannerlaw.com
Telephone: (813) 322-3565
ATTORNEYS FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by CM/ECF this 21st day of June, 2019.

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox

32