WILLIE R. SMITH,

        Plaintiff,

                                  Case No. 3:18-cv-1459-J-34MCR

vs.

CITY OF ATLANTIC BEACH,

        Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant City of Atlantic Beach's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 25; Motion), filed on June 28, 2019. Plaintiff Willie R. Smith filed a response in opposition to the Motion on July 18, 2019. See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28; Response). With leave of Court, see Order (Doc. 30), Defendant City of Atlantic Beach (the City) filed a reply in support of its Motion on August 26, 2019. See Defendant City of Atlantic Beach's Reply to Plaintiff's Memorandum in Opposition to the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 31; Reply). Accordingly, this matter is ripe for review.

## I.    Extrinsic Evidence

At the outset, the Court observes that Smith attached several exhibits to his Response. See Response, Exs. A-D. These documents consist of a Charge of Discrimination that Smith filed with the Equal Employment Opportunity Commission (EEOC) on October 2, 2015 (Ex. A; 2015 EEOC Charge), the EEOC's May 24, 2018 Right-

to-Sue Notice as to the 2015 EEOC Charge (Ex. B), two letters addressed from Smith to an EEOC investigator, as well as a letter Smith sent to the City's Human Resources Director, all complaining of discrimination (Ex. C), and Smith's second EEOC Charge of Discrimination, dated March 19, 2018 (Ex. D; 2018 EEOC Charge).   The City takes the puzzling position that the Court may not consider any of these documents, <u>see</u> Reply at 3-4, despite the fact that the City's primary argument in the Motion is premised on the scope of Smith's EEOC Charges, <u>see</u> Motion at 4-6.   Remarkably, the City maintains that it "limited its analysis in the Motion to Dismiss to the allegations (or lack thereof) in the Second Amended Complaint," <u>see</u> Reply at 3, but this statement is plainly belied by the City's assertions in the Motion about what is or is not contained in the two EEOC Charges. <u>See</u> Motion at 4-6.   Notably, the City does not challenge the authenticity of these documents.

    In general, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."   <u>See</u> <u>Day v. Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Rule 12(b), Federal Rules of Civil Procedure (Rule(s))).   However, the Eleventh Circuit recognizes certain exceptions to this rule.   <u>See</u> <u>Horne v. Potter</u>, 392 F. App'x 800, 802 (11th Cir. 2010).   As relevant here, courts may consider properly judicially noticed documents in resolving a motion to dismiss. <u>See</u> <u>id.</u> (holding that the district court "properly took judicial notice" of documents which were "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'" (quoting Fed. R. Evid. 201(b)); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").   Because the EEOC

Charges and Right-to-Sue Notice are part of the EEOC's administrative record and not subject to reasonable dispute, the Court will take judicial notice of these documents. <u>See</u> Fed. R. Evid. 201(b)(2); <u>Horne</u>, 392 F. App'x at 802; <u>Hicks v. City of Alabaster, Ala.</u>, No. 2:11-CV-4107-RDP, 2013 WL 988874, at *7 n.5 (N.D. Ala. Mar. 12, 2013) ("[W]hen considering a motion to dismiss, the court may take judicial notice of the contents of relevant public records, which include EEOC Charges and Right to Sue Letters."); <u>Hodge v. Miami Herald Co.</u>, No. 08-20633-CIV, 2008 WL 4180012, at *2 (S.D. Fla. Sept. 10, 2008) (taking judicial notice of the EEOC right-to-sue letter because "EEOC actions are matters of public record" and plaintiff did not dispute its authenticity); <u>Mann v. Geren</u>, No. CV407-140, 2008 WL 1766779, at *1 n.2 (S.D. Ga. Apr. 17, 2008) ("The Court takes judicial notice of plaintiff's EEOC actions as they are matters of public record."). As to the letters in Exhibit C, the June 14, 2017 letter and August 19, 2017 letter are attached to, and incorporated by reference into, the 2018 EEOC Charge. <u>Compare</u> 2018 EEOC Charge, Exs. A-B, <u>with</u> Response, Ex. C at 1-2. As such, the Court will consider those two letters as part of the Charge.

The third letter is more problematic. This letter is a March 3, 2018 email from Smith to Susan Diaz of the EEOC in which Smith purports to "expand" his prior EEOC Charge and lists "additional points" of "harassment and retaliation which are a daily occurrence." <u>See</u> Response, Ex. C. Smith did not reference or attach this letter to his 2018 EEOC Charge, nor does Smith provide any evidence showing that this unauthenticated, unverified letter is part of the EEOC's administrative record. As such, the Court cannot determine whether the March 3, 2018 letter is a document from a "source[] whose accuracy cannot reasonably be questioned." <u>See</u> Fed. R. Evid. 201(b). Notably, Smith submits

this letter without suggesting any basis on which the Court may appropriately consider it.[1] Accordingly, it appears that this letter is due to be excluded from consideration at this stage of the proceedings. Nonetheless, because the relevant portions of the letter are largely duplicative of the allegations made in the 2018 EEOC Charge and its attachments, consideration of the letter would have no impact on the outcome of the Motion.

## II.    Background[2]

Plaintiff Willie R. Smith, an African American male, has been employed by the City since August of 2014. <u>See</u> Second Amended Complaint (Doc. 24; Operative Complaint) ¶¶ 6-7. In the instant lawsuit, Smith asserts six claims of race discrimination (Counts I-VI), and six claims of retaliation (Counts VII-XII). <u>See</u> <u>generally</u> Operative Complaint. Counts I-V and corresponding Counts VII and XI are premised on the City's failure to promote Smith on five separate occasions. Counts VI and XII are based on several alleged adverse actions that purportedly took place after the City promoted Smith to a supervisor position in 2017. The factual allegations supporting Smith's claims are summarized below.

---

[1] Courts may also consider extrinsic evidence at the motion to dismiss stage when a document is "(1) central to the plaintiff's claim and (2) undisputed." <u>See</u> <u>Day</u>, 400 F.3d at 1276. Although Smith does briefly reference this letter in the Operative Complaint, <u>see</u> Operative Complaint ¶ 26, Smith does not assert in his Response that this letter forms a "necessary part" of, or is otherwise "central" to, his claims. <u>See</u> <u>Day</u>, 400 F.3d at 1276. Neither the Operative Complaint nor the Response address whether the City was aware of this letter such that it could form the basis of Smith's retaliation claims, and there is no indication whether the EEOC incorporated the unverified allegations in this letter into its investigation. Because Smith fails to show, or even argue, that this letter is "central" to his claims, the Court declines to apply this exception as well.

[2] In considering the Motion to Dismiss, the Court must accept all factual allegations in Plaintiff's Second Amended Complaint (Doc. 24; Operative Complaint) as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa Cnty., Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are largely drawn from the Operative Complaint, and may well differ from those that ultimately can be proved.

Smith began his employment with the City as a "Building Maintenance Tech." Id.
¶ 6. Soon after he began his employment with the City, Smith observed a disparity in
heavy labor assignments between African American and white employees, as well as the
exclusion of African American employees from meetings. Id. ¶¶ 9-10. In 2015, Smith
applied for the position of Deputy Director of Public Works with the City. Id. ¶ 11-12.
According to Smith, the City's "rules" require the City to interview all internal applicants
within the City who are "minimally qualified" for the position. Id. ¶ 12. Smith contends
that although he was "minimally qualified," he was not interviewed, in violation of this "rule."
Id. Ultimately, the City hired Scott Williams, who is white, for this position. Id. ¶ 11-12.
Smith alleges that he "was substantially more qualified than Mr. Williams for the Deputy
Director position." Id. ¶ 12.

Smith questioned the City's Human Resources Director, Cathy Berry, about the
failure to grant him an interview. Id. According to Smith, Berry responded that "she did
not know what the problem was and that he was 'only minimally qualified.'" Id. Berry
also allegedly told Smith that "he only had eight (8) days to contest the hiring of Williams,"
but Smith maintains that "the City policy said he had ten (10) days from the date that
Williams was hired to contest the hiring." Id. According to the Operative Complaint,
"[a]lthough Plaintiff was outside the ten day period, he still told Ms. Berry that the policy
had been violated. No action was taken at all to correct this violation." Id. This
conversation appears to have occurred in April of 2015. Id. ¶¶ 86, 94, 102, 110, 118, 126.
In addition, at an unspecified time "[i]n 2015," a Code Enforcement Officer position with
the City became available when Debbie White, who is white, retired from the position. Id.
¶ 14. Smith maintains that although he was also "minimally qualified" for this position, the

City once again failed to interview him, in violation of its policy.   Id.   Instead, the City hired an external applicant, John Marquee, who is white.   Id.   As discussed further below, Marquee left the position in 2016, and rather than advertise the position at that time, the City brought Debbie White out of retirement to replace Marquee.   Id. ¶ 16.

In October of 2015, Smith filed a charge with the EEOC alleging race discrimination against the City primarily based on the City's failure to interview and select him for the Deputy Director or Code Enforcement Officer positions.   Id. ¶ 15; see also Response, Ex. A: 2015 EEOC Charge.   Smith received a Right-to-Sue Notice from the EEOC as to this Charge on May 24, 2018.   See Response, Ex. B.   In Counts I and III of the Operative Complaint, Smith alleges that the City discriminated against him on the basis of race when it failed to promote him to the Deputy Director and Code Enforcement positions in 2015.   See Operative Complaint ¶¶ 32, 48.   In Counts VII and IX of the Operative Complaint, Smith alleges that the City failed to promote him to these positions in retaliation for his complaints of race discrimination, specifically, the April 2015 verbal report to Human Resources.   See Operative Complaint ¶¶ 86, 102.

In 2016, the City terminated then-Director of Public Works, Doug Layton.   Id. ¶ 11. "[A]fter a short stint in the position by another person, Don Jacobowhic, who is white," the City made Williams the Interim Director of Public Works "for a period of approximately one to two months."   See ¶¶ 11, 13.   Although Smith does not allege when, the City eventually promoted Williams to the "permanent Director of Public Works position without the position being advertised."   Id. ¶ 13.[3]   According to Smith:

_____

[3] Based on Smith's "statement of the ultimate facts," this promotion must have occurred at least as late as 2016, after the City terminated Layton.   Id. ¶ 11.   Indeed, Smith's 2018 EEOC Charge indicates that this incident likely occurred in 2017.   See Response, Ex. D (alleging that "Jacobovitz" resigned in April 2017").   Yet, in the corresponding Counts, Smith asserts that this failure to promote occurred in 2015.   See

> The Director position required an engineering degree. Prior occupants of the position, Don Jacobowhic and Doug Layton, were both engineers. Scott Williams was not an engineer and was not qualified for the position and neither was Plaintiff because he does not have an engineering degree. But Plaintiff was never given the chance to fill the Director position as it was not competitively filled. Plaintiff was qualified for the Director position when it was filled by Williams.

Id. In Count II of the Operative Complaint, Smith asserts a claim for race discrimination based on the City's failure to promote him to the Director of Public Works position. See Operative Complaint ¶ 40. In Count VIII, Smith claims that the City's failure to promote him to this position was retaliation for his prior complaints of discrimination. Id. ¶ 94.

"[I]n late 2016," while the 2015 EEOC Charge was still pending, Smith applied for an open Streets and Stormwater position. Id. ¶ 17. The City hired Jim Phols, who is white, for the position, although Smith maintains that he "was significantly more qualified for the position" than Phols. Id. Smith asked the then-Public Works Director, Jacobowhic, why Smith did not receive the position and was told that Phols was more qualified. Id. According to Smith, "[t]his was false as this was only Phols['] second job and he was no more than 32 years of age," whereas Smith "is 59 years of age and his qualifications were much greater than Phols." Id. In Count V of the Operative Complaint, Smith alleges that the City's failure to promote him to the Streets and Stormwater position was the result of race discrimination. Id. ¶ 64. In Count XI, Smith contends that the City made this decision in retaliation for his prior complaints of discrimination to Human Resources in April 2015, and the filing of the October 2015 EEOC Charge. Id. ¶ 108.

---

Operative Complaint ¶¶ 40, 94. The Court can only assume that this is a typographical error. Unfortunately, this inconsistency is characteristic of the lack of careful attention to detail shown throughout the Operative Complaint.

In 2017, the City terminated Chris Hoffman as the supervisor over Parks and Recreation. Id. ¶ 18. Smith "applied for this position and was promoted to the supervisory position in May 2017." Id. According to Smith, he "was told at the time that he was overwhelmingly qualified for the position." Id. Nevertheless, Smith alleges that after he received the promotion, Williams and Berry told him that "he would be a working supervisor (which was put into his position description), which was not required of Hoffman." Id. Smith maintains that the City "also removed the two white employees from [Smith's] department which meant that the only employees under [Smith's] supervision were black." Id. Smith alleges that the loss of these employees put a strain on Smith's department and ability to complete his tasks as follows:

> The two white employees were moved to other positions within the [City].
> One such white employee, Jim Phols, was promoted from a Pay Grade 19
> to a Pay Grade 20, and a position was created for the other one as a Beach
> Ranger II. The Beach Ranger position, filled by Chris Coddington, appears
> to have been fabricated in order to facilitate changes in pay structures and
> Phols, in his new position, is essentially being paid for duties that have been
> and continue to be completed by [Smith]. In addition, [the City's] creation
> of the Beach Ranger position has essentially been a guise which improperly
> allows funds to be drawn from the budget for [Smith's] department and
> spent for Coddington's position, although Coddington reports to Jim Phols,
> who reports directly to the Director of Public Works, just like [Smith.] But
> the money for at least the Beach Ranger position comes from [Smith's]
> budget.

Id. ¶ 19.

Smith alleges that he was subjected to pay disparities after his promotion to supervisor as well. Specifically, Smith contends that although additional job duties were added to the supervisor position, that his predecessor Hoffman did not have, Smith's starting pay for the supervisor position was "upon information and belief, lower than the pay Chris Hoffman received . . . ." Id. ¶ 21. Smith maintains that despite his "extensive

experience," he started at the "base pay" for the supervisor's position, whereas the Police Chief, who is white and had experience, "started higher than base pay for his position." Id.  In addition, according to Smith, he has been excluded from "participating in the budget process," unlike Hoffman who was invited to participate in budget meetings.  Id. ¶ 22. Smith maintains that he also had to schedule his own training following his promotion, whereas the City scheduled the training for Hoffman.  Id. ¶ 23.  And, Smith alleges that upon receiving the promotion, he was given the telephone that Hoffman had used and discovered that "Hoffman had been taking pictures and videos of [Smith] while he was working."  Id. ¶ 20.  Smith further asserts that he has been discouraged from helping others.  Id. ¶ 23.  In Counts VI and XII, Smith contends that these alleged adverse actions following his promotion to supervisor constitute race discrimination and retaliation.  Smith maintains that since filing the 2015 EEOC Charge he "has continued to report discrimination and retaliation" including written correspondence to the EEOC on June 14, 2017, and again on March 3, 2018, as well as in a letter to Berry, the Human Resources Director, on August 19, 2017.  Id. ¶ 26; see also Response, Ex. C.  According to Smith, he has been treated as an outcast since he filed the 2015 EEOC Charge.  See Operative Complaint ¶ 25.  Smith explains that he is not invited to lunches to which white employees are invited, and states that he was instructed, although he does not say by whom, not to talk to another African American employee who also filed a charge of discrimination against the City.  Id.

Last, Smith contends that in 2017, after the City promoted him to supervisor, the City advertised an opening for the Code Enforcement Officer position held by Debbie White, and the Clerk position, held by "Toni (lnu)."  Id. ¶¶ 16, 24.  According to Smith,

when White came out of retirement in 2016, she began training Toni, a white female, to take-over as Code Enforcement Officer, and "Toni became the de facto Code Enforcement Officer." Id. ¶ 16. Because the City advertised both the Code Enforcement Officer and the Clerk positions at the same time in 2017, Smith alleges that this shows that the City "had already unofficially chosen Ms. Toni, who was in the Clerk position, for the Code Enforcement position and advertised the position only as a formality." Id. ¶ 24. Smith contends that "[b]y delaying the advertisement for the Code Enforcement position, [Smith] could not apply for it again and it was only filled after [Smith] received the Supervisor position. Ms. Toni was officially selected for the Code Enforcement position approximately four to five months after [Smith's] promotion to the Supervisor position." Id. Smith alleges that by placing White in the Code Enforcement position in 2016, who began training Toni for the position, and then permanently giving the position to Toni in 2017, the City "failed to allow [Smith] to interview for and be promoted into this position." Id. ¶ 56. In Counts IV and X, Smith contends that this conduct constitutes intentional race discrimination as well as retaliation for his complaints of discrimination in April 2015 and his EEOC Charge in October 2015. Id. ¶¶ 56, 110.

In March of 2018, Smith filed a second charge of discrimination with the EEOC, this time with the assistance of counsel. Id. ¶ 26; see also Response, Ex. D: 2018 EEOC Charge. The 2018 EEOC Charge references the 2015 EEOC Charge and states that "there is a pattern and practice of racial discrimination in the workplace as several employee's [sic] have filed and or will be filing charges of discrimination claiming racial disparate treatment in the workplace, specifically but not limited to Timmy Johnson." See 2018 EEOC Charge. In the 2018 EEOC Charge, Smith further asserts that:

In retaliation for the filing of his charge and in continued disparate treatment due to his race, [Smith] has reported this disparate treatment and retaliation to both the Director of HR Cathy Berry and to the EEOC as set forth specifically but not limited to Exhibit A & Exhibit B attached hereto and made a part hereof, with no corrective action taken.

Id. Exhibit A to the 2018 EEOC Charge is Smith's August 19, 2017 letter to Berry. In this letter, Smith identified alleged adverse actions that occurred following his promotion to supervisor, including the decision to move certain employees to other divisions, the lack of training, pay disparities, lack of support from administrative stuff, lack of involvement in the budget process, and an issue with time sheets. See 2018 EEOC Charge, Ex. A. Smith asserted that, in his view, he had been "set-up for failure," and that a "brotherhood" of friendships had created a "hostile work environment and unfair treatment for those employees that are on the outside of the group." Id. Exhibit B to the Charge is the June 14, 2017 letter Smith sent to Susan Diaz with the EEOC. In this letter, Smith stated that he was writing to provide her with "an update on the continued Harassment, Discrimination and Hostile Work Environment in the City of Atlantic Beach." See 2018 EEOC Charge, Ex. B. Smith then listed alleged adverse actions to which he has been subjected since his promotion to supervisor, including the removal of all white employees from his division, the restructuring of his division to his detriment, the discovery that his predecessor had been taking pictures of him, and his receipt of "harassing phone calls and text messages." Id.

After he filed his 2018 EEOC Charge, Smith alleges that he attended a meeting with Williams, the Union Steward Eric Williams, and a white employee named "Justin (lnu)." Id. ¶ 27. Smith contends that at this June 18, 2018 meeting, Williams "stated to Justin something to the effect of, 'Don't disobey them because they're black,' referring to [Smith]

and Eric Williams, who is black like [Smith]." Id. Smith immediately left the meeting. Id. According to Smith, Justin quit and later told Smith that "he did not want to be a part of the good ole boy system and that he took issue with the blatant racism at the workplace." Id. Smith maintains that despite his "repeated complaints to [the City] and the EEOC, the disparate treatment and retaliation are ongoing." Id. ¶ 28.

Smith commenced this action in state court on August 24, 2018. See Complaint (Doc. 3). The City then removed the action to this Court on December 10, 2018. See Notice of Removal (Doc. 1). The Court found it necessary to strike Smith's pleadings on two occasions due to drafting deficiencies. See Order (Doc. 6), entered December 12, 2018; Order (Doc. 23), entered May 31, 2019. Smith filed the Operative Complaint on June 21, 2019, in which he asserts claims for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Florida Civil Rights Act (FCRA), Chapter 760, Florida Statutes. The City moved to dismiss the Operative Complaint on June 28, 2019. In support of its request for dismissal, the City raises three arguments: 1) Smith fails to adequately allege that he exhausted his administrative remedies prior to filing suit, see Motion at 3, 2) Smith's claims are not properly exhausted because his allegations exceed the scope of his EEOC Charges, id. at 4-6, and 3) Smith's retaliation claims are due to be dismissed for failure to state a claim because Smith fails to identify who specifically retaliated against him, who was aware of his protected conduct, or a causal connection between the protected conduct and retaliation, id. at 6-7.

In the Response, Smith maintains that he adequately alleged the satisfaction of conditions precedent pursuant to Rule 9(c), and that the facts stated in his EEOC Charge "could have reasonably been extended" to cover all the incidents of discrimination and

retaliation alleged in the Operative Complaint.  See Response at 7-8.  Smith further contends that he has alleged sufficient facts to state plausible claims for retaliation.  Id. at 9-14.  According to Smith, to adequately state a claim for relief, he is not required to identify who took the adverse employment actions against him or who knew about the protected activity.  Id. at 13.  Regardless, Smith maintains that the Operative Complaint identifies Williams and Berry as the primary City employees who were taking action against him, and also includes allegations that Smith reported "unlawful employment practices" to Berry in April 2015.  Id.

## III.  Exhaustion

### A.    Applicable Law

Prior to commencing a Title VII action in court, "a complainant must first file a charge with the Equal Employment Opportunity Commission . . . ."  See Fort Bend Cnty., Tex. v. Davis, 139 S. Ct. 1843, 1846 (June 3, 2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)); see also Bennett v. Chatham Cnty. Sheriff Dep't, 315 F. App'x 152, 161 (11th Cir. 2008); Kelly v. Dun & Bradstreet, Inc., 557 F. App'x 896, 898 (11th Cir. 2014).  "An EEOC charge is timely in a deferral state, like Florida, if filed within 300 days of the last discriminatory act." See Wen Liu v. Univ. of Miami School of Medicine, 693 F. App'x 793, 796 (11th Cir. 2017). Once the EEOC terminates its investigation and issues a right-to-sue notice, a claimant may then bring a civil action against the named respondent by filing a complaint within ninety days.  See Gant v. Jefferson Energy Co-op., 348 F. App'x 433, 434 (11th Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)); Wilkerson v. H&S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) ("In order to sue for violations of Title VII, a plaintiff must first exhaust administrative remedies, which means she must receive a right-to-sue letter from the EEOC.").  The

Supreme Court has recently clarified that this charge-filing requirement "is a processing rule, albeit a mandatory one, [but] not a jurisdictional prescription delineating the adjudicatory authority of courts." See Fort Bend Cnty., Tex., 139 S. Ct. at 1851.

Likewise, "[b]efore a plaintiff may bring an FCRA civil action, he must exhaust his administrative remedies, as set forth in Fla. Stat. § 760.11." See McCullough v. Nesco Res. LLC, 760 F. App'x 642, 646 (11th Cir. 2019). This statute requires a plaintiff to file "formal charges with the EEOC or a state commission within 365 days of the alleged FCRA violation." Wen Liu, 693 F. App'x at 796 (citing Fla. Stat. § 760.11(1)). Under the FCRA, an aggrieved party may seek redress in court, "only after the [Florida Commission on Human Relations (FCHR)] determines there is reasonable cause to believe that unlawful discrimination occurred, or the charge remains unresolved for 180 days . . . ." See Sheridan v. State of Fla., Dep't of Health, 182 So. 3d 787, 792 (Fla. 1st Dist. Ct. App. 2016). If the FCHR makes a determination within the 180-day period that there is no reasonable cause, then "the claimant is limited to review before an administrative law judge under Chapter 120, Florida Statutes, and cannot file a civil action unless that review is successful." Id. (citing Fla. Stat. § 760.11(7)).

Significantly, "[t]he purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)). Thus, a plaintiff's discrimination claims in any subsequent lawsuit will be "limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of

discrimination." <u>Kelly</u>, 557 F. App'x at 899 (citing <u>Gregory</u>, 355 F.3d at 1280). This means that a plaintiff "may not raise '[a]llegations of new acts of discrimination' in the judicial proceedings." <u>Hillemann v. Univ. of Central Fla.</u>, 167 F. App'x 747, 749 (11th Cir. 2006) (quoting <u>Wu v. Thomas</u>, 863 F.2d 1543, 1547 (11th Cir. 1989)); <u>see</u> <u>also</u> <u>Kelly</u>, 557 F. App'x at 899 ("[A]llegations of new acts of discrimination that are offered as the essential basis for requested judicial review are not appropriate absent prior EEOC consideration."). However, because courts are "'extremely reluctant to allow procedural technicalities to bar'" discrimination claims, the scope of an EEOC complaint is not "'strictly interpreted.'" <u>See</u> <u>Gregory</u>, 355 F.3d at 1280 (quoting <u>Sanchez v. Std. Brands, Inc.</u>, 431 F.2d 455, 460-61, 465 (5th Cir. 1970))[4]; <u>Kelly</u>, 557 F. App'x at 899. Rather, "[t]he proper inquiry is whether the complaint is like or related to, or grew out of, the allegations contained in the relevant charge." <u>Kelly</u>, 557 F. App'x at 899. Stated another way, "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint . . . ." <u>Gregory</u>, 355 F.3d at 1279 (quoting <u>Wu</u>, 863 F.2d at 1547).

To adequately <u>plead</u> exhaustion, a plaintiff need only "'generally allege in [his] complaint that all conditions precedent to the institution of the lawsuit have been fulfilled.'" <u>See</u> <u>Burnett v. City of Jacksonville, FL</u>, 376 F. App'x 905, 906-07 (11th Cir. 2010) (quoting <u>Jackson v. Seaboard Coast Line R.R. Co.</u>, 678 F.2d 992, 1010 (11th Cir. 1982)); <u>see</u> <u>also</u> Rule 9(c). "If the defendant doubts the veracity of the plaintiff's allegation, in whole or in part, then the defendant may deny 'specifically and with particularity' that the preconditions have not been fulfilled." <u>See</u> <u>Jackson</u>, 678 F.2d at 1010. "The plaintiff then bears the

---

[4] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied." Id.

## B.    Analysis

In the Motion, the City moves to dismiss the Operative Complaint based on a failure to exhaust for two reasons.    First, the City asserts that Smith failed to adequately allege in the Operative Complaint that he satisfied the exhaustion requirements.    See Motion at 3.    This argument is without merit.    Smith alleges in the Operative Complaint that "Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC. This action is timely filed thereafter."   See Operative Complaint ¶ 5.   This is all that is required under the law of the Eleventh Circuit.[5]   See Jackson, 678 F.2d at 1010; Myers v. Central Fla. Invs., Inc., 592 F.3d 1201, 1224 (11th Cir. 2010); Reed v. Winn Dixie, Inc., 677 F. App'x 607, 610 (11th Cir. 2017) ("In general, the plaintiff need allege in the complaint only that all conditions precedent to suit have been fulfilled."); Burnett, 376 F. App'x at 906-

---

[5] In its Reply, the City argues that Smith's allegations of compliance with "the administrative requirements of Title VII is not tantamount to compliance with the requirements of the FCRA."  See Reply at 2-3.  The City supports this proposition with citations to caselaw from 1991 and 1996, and asserts that Smith must "file a charge of discrimination directly with the FCHR."  See Reply at 2-3.  Setting aside the obvious problem with this argument that Smith affirmatively alleges that he filed a charge with the FCHR, see Operative Complaint ¶ 5, even if not, the City's argument fails to appreciate that the FCRA was amended nearly twenty years ago, in 2001, to specifically provide that "[i]n lieu of filing the complaint with the [FCHR], a complaint under this section may be filed with the federal Equal Employment Opportunity Commission . . . ."  See Fla. Stat. § 760.11(1); see also 2001 Fla. Sess. Law Serv. Ch. 2001-187 (C.S.S.B. 354).  As such, more recent case law, including at least one case cited in the City's Motion, recognizes that to satisfy the filing requirements of the FCRA, a plaintiff may file with the EEOC or the FCHR.  See, e.g., Jones v. Bank of Am., 985 F. Supp. 2d 1320, 1325 (M.D. Fla. 2013); see also Wen Liu, 693 F. App'x at 796 ("Under the FCRA, a plaintiff must file formal charges with the EEOC or a state commission within 365 days of the alleged FCRA violation.");  Rodrigues, 2015 WL 6704296, at *7 (citing Fla. Stat. § 760.11(1)).  Notably, both the 2015 and the 2018 EEOC Charge indicate Smith's desire to have the charge "filed with both the EEOC and the State or local Agency, if any."  See 2015 EEOC Charge; 2018 EEOC Charge.  Thus, the City's argument is without merit and the Court takes this opportunity to remind counsel for the City that her duty of candor to the Court requires that she make a reasonable inquiry to ensure that her legal arguments are supported by viable law.

07; <u>Rodrigues v. SCM I Invs., LLC</u>, No. 2:15-cv-128-FtM-29CM, 2015 WL 6704296, at *2-3 (M.D. Fla. Nov. 2, 2015) (citing Fla. Stat. § 760.11(1)); <u>Gonzalez v. Nat'l Settlement Solutions, Inc.</u>, No. 14-80484-CIV, 2014 WL 4206812, at *5 (S.D. Fla. Aug. 25, 2014); <u>see also</u> Rule 9(c).[6]

Second, the City maintains that several of Smith's claims are not properly exhausted as the allegations exceed the scope of Smith's 2015 and 2018 EEOC Charges. <u>See</u> Motion at 4-6. The City argues that Smith's claims concerning the Director of Public Works position, the Code Enforcement Officer position filled in 2017, and the Streets and Stormwater position concern "new acts of discrimination which occurred after the filing of [the 2015 EEOC Charge] and which were not included in [the 2018 EEOC Charge]." <u>See</u> Motion at 5-6. The City also challenges Smith's allegations that: Smith discovered photographs and videos of himself on a former supervisor's phone, the City discouraged him from helping others, and the Director of Public Works made a racially charged comment at a June 2018 meeting. <u>Id.</u> The City argues that these are "new allegations of discrimination which are absent from Plaintiff's Charges of Discrimination not reasonably related to the claims made in either." <u>Id.</u> In the Response, Smith contends that the facts

---

[6] Other than its arguments about the scope of the EEOC Charges, addressed below, the City does not affirmatively assert that Smith did, in fact, fail to comply with the conditions precedent required before filing suit. Rather, as Smith correctly observes in his Response, the City's argument is limited to the contention that Smith failed to adequately <u>allege</u> his compliance in the Operative Complaint. <u>See</u> Response at 1-2. However, as stated above, general allegations of compliance are sufficient to satisfy the relevant pleading standards. <u>See</u> Rule 9(c). Whether Smith did in fact comply with all conditions precedent to suit is unclear. Indeed, to the extent Smith brings claims under the FCRA arising out of the 2018 EEOC Charge, the 180-day period of review had not expired prior to the filing of this lawsuit in state court. Therefore, Smith's FCRA claims arising out of that Charge are only properly exhausted if the FCHR had made a reasonable cause determination prior to the initiation of this lawsuit. <u>See Sheridan</u>, 182 So. 3d at 792. Likewise, any Title VII claims arising out of the 2018 EEOC Charge are properly exhausted only to the extent Smith has received a right-to-sue notice on that Charge. The Court is unable to discern from the allegations of the Operative Complaint or the record in this case whether a right-to-sue notice or reasonable cause determination as to the claims in the 2018 EEOC Charge have issued. Nevertheless, as the City did not raise these arguments in its Motion, the issue is not currently before the Court.

in Smith's 2015 EEOC Charge, along with the supplemental letters he sent to the EEOC, "could have reasonably been extended to encompass all of the positions and incidents alleged to be race discrimination in the Second Amended Complaint . . . ." See Response at 7. In addition, Smith maintains that "the facts in Plaintiff's EEOC Charge would have reasonably been extended to encompass a claim for retaliation because they were inexplicably [sic] intertwined with his complaints for race discrimination." Id.

The Court first addresses whether Smith has properly exhausted the discrimination claims, which are set forth in Counts I through VI. Counts I and III allege claims of discrimination premised on the City's failures to promote Smith in 2015 to the Deputy Director of Public Works or Code Enforcement Officer positions. Smith expressly identifies both of these failures to promote as incidents of race discrimination in the 2015 EEOC Charge. As such, the Court finds the claims set forth in Counts I and III are properly exhausted.[7] In Counts II, IV, and V, Smith asserts claims for racial discrimination premised on the City's failure to promote Smith to the following positions: Public Works

---

[7] The City does not appear to argue that these particular claims exceed the scope of Smith's EEOC Charges. See Motion at 5-6. Indeed, the City does not identify the specific Counts which it maintains are subject to dismissal for failure to exhaust, instead asserting that certain "allegations" are unexhausted and then concluding that this warrants dismissal of the entire Operative Complaint. See Motion at 5-6. By framing the argument this way, the City fails to distinguish between allegations included in the Operative Complaint as background evidence, and those incidents which give rise to Smith's actionable claims. For example, the City challenges Smith's allegations about discriminatory labor assignments and the exclusion of black employees from morning meetings in 2014 and 2015 as "new acts of discrimination" which are absent from the EEOC Charges. Id. at 4-5; see also Operative Complaint ¶¶ 9-10. However, upon review of the twelve Counts of the Operative Complaint, it is apparent that those allegations are not part of the adverse employment actions giving rise to Smith's specific claims. Rather, Smith appears to include these allegations as mere background evidence in support of his actual claims—the failures to promote and unequal treatment after his promotion. Because the exhaustion requirements of Title VII do not "bar an employee from using [unexhausted] prior acts as background evidence in support of a timely claim," the City's contention that Smith failed to exhaust these allegations is misplaced. See Nat'l R.R. Passenger Corp. v. Morgan (Morgan), 536 U.S. 101, 113 (2002); Ray v. Freeman, 626 F.2d 439, 442 n.3 (5th Cir. 1980); see also El-Saba v. Univ. of S. Ala., No. 15-00087-KD-N, 2015 WL 5849747, at *18 n.25 (S.D. Ala. Sept. 22, 2015) adopted as modified 2015 WL 5882977, at *1 (S.D. Ala. Oct. 7, 2015).

Director (presumably in 2016 or 2017), the 2016/2017 Code Enforcement Officer position, and the 2016 Streets and Stormwater position.   These incidents all occurred after the filing of the 2015 EEOC Charge, and none of them are mentioned directly or indirectly in the 2018 EEOC Charge or its attachments.   See 2018 EEOC Charge, Exs. A-B. Nonetheless, Smith argues that these additional failures to promote Smith are "encompass[ed]" by the facts in the 2015 EEOC Charge, as well as in the letters he sent to "supplement" his Charge.   See Response at 5-7.   This argument is unavailing.

The three alleged failures-to-promote in 2016 and 2017 do not "amplify or clarify the previous allegations, nor [do they] grow out of the previous claims."   See Stuart v. Jefferson Cnty. Dep't of Human Res., 152 F. App'x 798, 801 (11th Cir. 2005).   Rather, these three incidents are new and discrete acts of alleged discrimination "that are offered as the essential basis for requested judicial review . . . ."   See Kelly, 557 F. App'x at 899; Bennett, 315 F. App'x at 161 ("The discriminatory decision not to promote an employee is a discrete act that triggers the 180-day period in which to file a charge of discrimination."). "Discrete acts of discrimination, such as termination or failure to promote, that occur after the filing of an EEOC complaint must first be administratively reviewed before they may serve as a basis for a judicial finding of discriminatory conduct."   Kelly, 557 F. App'x at 899 (emphasis added); see also Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980) ("Discrete acts of discrimination which occur after the filing of an EEO complaint must first be reviewed administratively before such acts may serve as the basis for a finding of discriminatory conduct justifying remedial action by the court.").   Because the 2016 and 2017 failures to promote were not made a part of any administrative filing with the EEOC

or the FCHR, those claims are not properly exhausted. See Haugabrook v. Cason, 518 F. App'x 803, 809 (11th Cir. 2013). As such, Counts II, IV and V are due to be dismissed.[8]

As to Count VI of the Operative Complaint, the City challenges only the following specific allegations: 1) Smith's alleged discovery of photographs and videos of him on his predecessor's phone, 2) the allegation that the City discouraged Smith from helping others, and 3) the incident described in the Operative Complaint where Public Works Director Williams purportedly made racially-charged comments at a June 2018 meeting. See Motion at 5-6. Significantly, Smith's 2018 EEOC Charge is premised on the contention that following his promotion to supervisor, the City has subjected Smith to various discriminatory and retaliatory adverse actions. The letters attached to the 2018 EEOC Charge include allegations that Smith has not received the same level of support, training, or pay as white employees, and that the City restructured his division to remove the white employees, placing a strain on Smith and his division. See 2018 EEOC Charge, Exs. A-B. The letter attached as Exhibit B to the Charge includes the allegation that his predecessor "was taking photos of [Smith] while at work," and specifically identifies Public Works Director Scott Williams as "the basis for the Racial Comments, Discrimination, Harassment and Hostile Work Environment." See 2018 EEOC Charge, Ex. B. These are the same allegations that primarily form the basis for Smith's discrimination claim in Count VI of the Operative Complaint. Although the 2018 EEOC Charge does not include

_____

[8] Smith does not argue that the scope of the EEOC investigation extended beyond the specific allegations in the Charge to include these additional claims, nor does he present evidence, such as the EEOC investigative file, demonstrating the actual scope of the EEOC's investigation. Cf. Gibson v. Walgreen Co., No. 6:07-cv-1053-Orl-28KRS, 2007 WL 9723200, at *5 (M.D. Fla. Nov. 16, 2007). Indeed, even accepting Smith's "supplemental" letters as evidence regarding the scope of the EEOC investigation, see Response at 5, Ex. C, none of these letters make any reference to these three incidents, instead focusing entirely on Smith's 2017 promotion to supervisor and the subsequent adverse actions. Id.

an assertion that the City discouraged Smith from helping other employees, this allegation is related to and merely amplifies the allegations in the 2018 EEOC Charge that the City has subjected Smith to disparate treatment following his promotion to supervisor.[9]  As such, the Motion is due to be denied as to the claim and allegations in Count VI.

Turning next to the retaliation claims, Counts VII and IX concern the same two promotions addressed in the 2015 EEOC Charge.   Notably, Smith did not select "retaliation" as a basis for the alleged discrimination described in the 2015 EEOC Charge, nor did he mention possible retaliation in the fact portion of the Charge.   However, Smith's failure to specifically claim retaliation is not dispositive if "[t]he facts alleged in [his] EEOC charge could have reasonably been extended to encompass a claim for retaliation . . . ." See Gregory, 355 F.3d at 1280.  As stated above, "'the scope of an EEOC complaint should not be strictly interpreted," and indeed, "[c]ourts are . . . 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII].'"  See id. at 1280 (last alteration in original) (quoting Sanchez, 431 F.2d at 460-61, 65).   This is particularly true where, as here, a plaintiff files an EEOC charge without the assistance of counsel.  See id. at 1280-81 (citing Danner v. Phillips Petro. Co., 447 F.2d 159, 161-62 (5th Cir. 1971) for the proposition that EEOC complaints filed "without the assistance of counsel are to be construed liberally").   Thus, the Court will carefully consider the content of the 2015 EEOC Charge to determine whether the facts alleged reasonably could have been "extended to encompass a claim for retaliation."   Id. at 1280.

---

[9] As to the alleged racially charged comment at the June 2018 Meeting, this allegation, like those noted above is not included as part of the actionable adverse employment actions identified in Count VI. Rather, this allegation appears to be included simply as further evidence of the City's discriminatory intent. As such, the City's exhaustion argument with respect to this allegation is misplaced for the reasons stated above.  See supra note 7.

The 2015 EEOC Charge includes facts indicating that "[b]etween February and May of 2015," Smith applied for "the position," actually two separate positions, of Deputy Director of Public Works and Code Enforcement Officer. See 2015 EEOC Charge. He states that despite being qualified for "the position," he was not interviewed for "the position." Id. Smith asserts that instead the City hired two white men to fill these positions. Id. Smith then alleges that in April of 2015, he "complained to Cathy Berry, Human Resources Manager, about being not selected for the position. I complained about the discrimination; however, no action was taken with my complaint." Id. (emphasis added). Because Smith uses the singular word "position" to refer to both positions throughout the Charge, it is unclear whether Smith's complaint to Berry in April 2015 occurred after he was denied both positions, or merely one of them. Nevertheless, based on the February to May timeframe alleged, and because the Court must construe the EEOC Charge broadly, the Court finds that one can reasonably interpret the Charge to mean that Smith complained to Berry in April after he was denied the Deputy Director promotion, and then in May 2015, he was denied the Code Enforcement Officer promotion. As such, an EEOC investigation into the City's decision to deny Smith the second promotion would encompass Smith's prior complaints to Berry and reasonably would have uncovered any evidence of retaliation. See Gregory, 355 F.3d at 1280. Thus, the Court finds that Smith's retaliatory failure-to-promote claim in Count IX premised on the 2015 Code Enforcement Officer position is within the scope of the 2015 EEOC Charge and properly exhausted.

Smith also asserts a retaliation claim premised on the City's failure to promote him to Deputy Director in 2015. See Operative Complaint, Count VII. However, there is no

plausible way to read the 2015 EEOC Charge to suggest a retaliatory motive as to that position. As described above, although Smith's 2015 EEOC Charge does contain allegations that he complained about discrimination, this report of discrimination must have occurred after the initial failure to promote because Smith asserted that he complained to Berry "about not being selected for the position." See 2015 EEOC Charge. It defies logic to suggest that Smith was denied the promotion in retaliation for complaining afterwards about being denied that promotion. Moreover, unlike in Gregory, there are no other facts in the 2015 EEOC Charge suggesting that prior to the denial, Smith had previously been subjected to, and thus may have complained of, discrimination. See Gregory, 355 F.3d 1278-80. As such, there are no facts that would give a reasonable investigator reason to consider whether the City's initial failure to promote Smith to Deputy Director was retaliatory.

Regardless, even if this retaliation claim could fall within the scope of the 2015 EEOC Charge, it is nevertheless due to be dismissed for failure to state a claim. In the Operative Complaint, Smith alleges that he was not interviewed nor selected for the Deputy Director of Public Works position in retaliation for his verbal complaints to the Human Resources Manager in April 2015. See Operative Complaint ¶ 86. However, the alleged details of this complaint to Human Resources make evident that this conversation occurred after the City refused to promote Smith to the Deputy Director position because the discriminatory conduct Smith purportedly complained about was the City's decision to hire Williams over Smith for that position. See id. ¶ 12. Because there are no factual allegations that Smith ever engaged in statutorily protected activity prior to the City's selection of Williams over Smith for the Deputy Director position, Smith cannot state a

claim for retaliation as to that promotion.   See Arafat v. Sch. Bd. of Broward Cnty., 549 F. App'x 872, 874 (11th Cir. 2013) ("To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action.").   Thus, the claim in Count VII is due to be dismissed.

Turning next to Counts VIII, X and XI, Smith alleges that the City engaged in unlawful retaliation for his prior complaints of discrimination by refusing to promote him to Director of Public Works, Code Enforcement Officer (the second time), and a Streets and Stormwater position.   These incidents all occurred after the 2015 EEOC Charge.   In the Response, Smith argues that while the 2015 EEOC Charge was pending, he "supplemented" the Charge with additional facts "supporting both his race discrimination and retaliation claims."   See Response at 5 (citing Ex. C), and ultimately filed a second charge on March 23, 2018, id., Ex. D.   However, as stated above, these three discrete incidents of a failure to promote are not referenced, directly or indirectly, in the "supplemental" letters Smith sent to the EEOC, the 2018 EEOC Charge, or its attachments.   See Response, Ex. C-D.   Indeed, the 2018 EEOC Charge and its attached letters focus entirely on events occurring after the City promoted Smith to supervisor in 2017.   As such, Smith's contention that the facts alleged in his EEOC Charges or the "supplemental" letters "encompass" these retaliation claims is unavailing.   See Response at 7.   For the reasons stated above, Smith's new claims in the Operative Complaint about three additional promotions do not "amplify" or "clarify" any matters addressed in the Charges, but rather constitute new, discrete acts that an EEOC investigator would have

no reason to inquire about or investigate.   As such, these claims are beyond the scope of

Smith's EEOC Charges and due to be dismissed for failure to exhaust.[10]

[10] The Court notes that there is some authority to suggest that Title VII claims of post-charge retaliation need not be separately exhausted.  See Gupta v. East Tex. State Univ, 654 F.2d 411 (5th Cir. Unit A Aug. 1981); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 168-69 (11th Cir. 1988).   However, Smith does not cite these cases or rely on this exception to the exhaustion requirement in his Response, and as such, the Court need not consider it.  See Reid v. Naples Cmty. Hosp., Inc., No. 2:16-cv-33-FtM-29CM, 2017 WL 960634, at *4 n.13 (M.D. Fla. Mar. 13, 2017).   Regardless, the Court notes that the continued viability of this exception is a matter of some dispute as both Gupta and Baker were decided before the Supreme Court's decision in Morgan where the Court held that discrete acts of employment discrimination and retaliation—such as failures to promote—are separate, actionable incidents that must be timely exhausted in accordance with Title VII.  See Morgan, 536 U.S. at 113-14.  Following Morgan, circuit courts are split on whether discrete acts of post-charge retaliation must be separately exhausted.  See Bennett, 315 F. App'x at 162 n.7 (noting that circuits disagree on whether, following Morgan, discrete acts of retaliation must be exhausted, but not resolving the issue).  Although the Eleventh Circuit has not had occasion to decide the issue, it has specifically noted that "Title VII requires a charge to be filed 'after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and that '[o]ccurred means that the practice took place or happened in the past.'"  See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 n.5 (11th Cir. 2002) (quoting Morgan, 536 U.S. at 109).

Significantly, in an unpublished decision, the Eleventh Circuit has interpreted the Gupta and Baker exception to apply in only narrow circumstances.  See Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 893 (11th Cir. 2014).  Specifically, the Duble court observed that in both Baker and Gupta, the plaintiffs had already commenced lawsuits on their prior EEOC charges when the retaliation at issue purportedly occurred.  See Duble, 572 F. App'x at 893 (citing Gupta, 654 F.2d at 413-14 and Baker, 856 F.2d at 168-69).  In contrast, the alleged retaliatory termination in Duble occurred nearly two years prior to the filing of the federal lawsuit and while the initial EEOC charge was still pending.  See id.  As such, the Duble court reasoned that the case was "factually distinguishable from Gupta and Baker," such that "the Gupta rule does not apply."  Id.  Because the Duble plaintiff "had the opportunity to amend his EEOC charge or file a new charge relating to his termination" and chose not to, the court held that he had failed to exhaust his administrative remedies.  Id.; but see Thomas v. Miami Dade Pub. Health Trust, 369 F. App'x 19, 23 (11th Cir. 2010) (applying Gupta and Baker outside the specific circumstances identified in Duble).

Notably, district courts in the Eleventh Circuit are split on whether to follow this non-binding, unpublished decision.  Compare Robinson v. Koch Foods of Ala., No. 2:13-cv-557-WKW, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014) (applying Duble and finding a retaliation claim unexhausted) with Baskerville v. Sec'y of the Dep't of Veterans Affairs, 377 F. Supp. 3d 1331, 1335-36 (M.D. Fla. 2019) (collecting cases) (declining to apply Duble as unpublished, non-binding authority); see also Tanniehill v. Ball Healthcare, No. 2:08-cv-01387-HGD, 2010 WL 11614278, at *8-9 (N.D. Ala. May 18, 2010) (finding that after Morgan discrete acts of retaliation occurring after an initial charge must be administratively exhausted without addressing Gupta or Baker); Terhune v. Potter, No. 8:08-cv-1218-T-23MAP, 2009 WL 2382281, at *3-4 (M.D. Fla. July 31, 2009) (same); Green v. Office of the Sheriff's Office, No. 3:99-CV-658-J-21-HTS, 2002 WL 35630102, at *3 (M.D. Fla. Nov. 4, 2002) (finding plaintiff failed to exhaust claim based on a discrete act of retaliation because Gupta did not survive Morgan).   Upon due consideration, the Court is persuaded by the analysis in Duble and finds it entirely applicable here.  Because Smith opted not to amend his prior 2015 EEOC Charge, or include these discrete incidents in his subsequent 2018 EEOC Charge, the Court finds that these claims are not properly exhausted.  See Duble, 572 F. App'x at 893; Morgan, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").   And notably, to the extent Smith brings his claims pursuant to the FCRA, the Gupta exception does not appear to apply under Florida law.  See Westlund v. Lab. Corp. of Am. Holdings, No. 6:10-cv-1260-Orl-KRS, 2013 WL 12203234, at *2 (M.D. Fla. Feb. 23, 2013) (citing City of West Palm Beach v. McCray, 91 So. 3d 165, 172-73 (Fla. 4th Dist. Ct. App. 2012)).

In Count XII of the Operative Complaint, Smith contends that, following his promotion to supervisor, the City treated him differently than other employees in retaliation for his prior complaints of discrimination. In the 2018 EEOC Charge, Smith checks both "race" and "retaliation" as the "cause of discrimination," and Smith also specifically mentions retaliation in the fact section of the Charge. Although the City contends that certain of Smith's allegations in the Operative Complaint were not mentioned in the EEOC Charge, as discussed above, those allegations merely amplify the allegations in the Charge. As such, the Court finds that Smith's claims of retaliation in Count XII of the Operative Complaint are within the scope of his 2018 EEOC Charge. In accordance with the foregoing, to the extent the City moves for dismissal on exhaustion grounds, the Motion will be granted as to Counts II, IV, V, VII, VIII, X and XI, and those Counts will be dismissed for failure to exhaust.

## IV. Failure to State a Claim

### A. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face."   <u>Twombly</u>, 550 U.S. at 570.   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).   A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see</u> <u>also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).   Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."   <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680.   Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

### B.  Applicable Law[11]

Under Title VII an employer is prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or

---

[11] "Both Title VII and the FCRA prohibit retaliation by an employer against an individual because he has opposed an unlawful employment practice."   <u>See</u> <u>Artiste v. Broward College</u>, 685 F. App'x 805, 806 (11th Cir. 2017) (citing 42 U.S.C. § 2000e-3(a) and Fla. Stat. § 760.10(7)).   Retaliation claims under the FCRA are "substantively similar to Title VII retaliation claims," and as such, the Court uses the same analysis for both claims.   <u>See</u> Howard v. Walgreen Co., 605 F.3d 1239, 1244 n.4 (11th Cir. 2010).

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). "[I]n the context of a Title VII retaliation claim, a materially adverse action 'means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Crawford, 529 F.3d at 974 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted)). "[P]etty slights, minor annoyances, and simple lack of good manners" in the workplace are normally not actionable under Title VII. Burlington, 548 U.S. at 68. Additionally, the Supreme Court has clarified that a Title VII plaintiff must demonstrate "but-for" causation to sustain a retaliation claim. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). This means that "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Id. at 362.

### C.    Analysis

In the Motion, the City argues that Smith's allegations are insufficient to state a plausible claim for retaliation. In light of the Court's determinations on exhaustion, the Court need address only Smith's two remaining retaliation claims: Count IX—the allegedly retaliatory failure to promote Smith to Code Enforcement Officer in 2015, and Count XII—the allegedly retaliatory adverse treatment of Smith after his promotion to supervisor in

2017.   The City maintains that Smith fails to plausibly allege a causal connection between the statutorily protected activity in which he engaged and the purported retaliation.   <u>See</u> Motion at 6-7.   More specifically, the City contends that Smith fails to identify the individuals at the City who were aware of his protected conduct or the individuals responsible for the alleged retaliatory conduct.   Although the Operative Complaint is not a model of clarity, upon review of the factual allegations in the Operative Complaint as a whole, the Court is satisfied that Smith has adequately stated claims for retaliation in Counts IX and XII.[12]

At the outset of the Operative Complaint, Smith alleges that the individuals primarily responsible for his mistreatment are Public Works Director Scott Williams and Human Resources Director Cathy Berry.   <u>See</u> Operative Complaint ¶ 8.   As such, while the remainder of the Operative Complaint fails to identify the specific individuals at the City responsible for the decisions adversely affecting Smith, one can reasonably draw the inference that Smith attributes this conduct to Williams and Berry.   Moreover, although Smith largely fails to include specific timeframes, viewing Smith's allegations as a whole, it appears that he complained to Berry about discrimination in April 2015, and was denied the promotion to Code Enforcement Officer at some point thereafter, but before he filed the EEOC Charge in October 2015.   In addition, Smith alleges that he "has continued to report discrimination and retaliation" to both the EEOC and Berry, and asserts that discrimination and retaliation have been ongoing despite his "repeated complaints to Defendant . . . ."   <u>Id.</u> ¶¶ 26, 28.   Thus, one can plausibly infer that at least Berry knew of

---

[12] The City does not challenge the sufficiency of Smith's allegations that he engaged in protected conduct, or that he suffered materially adverse employment actions.   As such, the Court's analysis focuses solely on the causation element.

Smith's complaints of discrimination, which were ongoing throughout his employment with the City, prior to the decision not to promote Smith to Code Enforcement Officer in 2015, and prior to the alleged adverse actions that occurred following his promotion to supervisor in 2017.

To the extent the City argues that Smith fails to show a causal connection given the lack of specific dates showing any temporal proximity between his complaints and the purported retaliation, the Court is not convinced. See Reply at 6-7. In Ward v. United Parcel Service, 580 F. App'x 735 (11th Cir. 2014), the Eleventh Circuit summarized the ways a plaintiff can satisfy his burden of proving causation as follows:

> In the context of employment retaliation cases, a plaintiff's burden to prove causation can be met by showing a close temporal proximity between the statutorily protected activity and adverse-employment action. Where there was a significant time gap between the protected activity and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate.

Ward, 580 F. App'x at 739 (internal citation omitted). As to the Code Enforcement Officer position, it appears that Smith was denied this promotion within months of complaining to Berry. As to the alleged retaliatory treatment following Smith's promotion to supervisor, the Court is unable to discern from the allegations in the Operative Complaint whether this purported mistreatment occurred in close proximity to any of Smith's complaints of discrimination. Nevertheless, Smith's allegations are not so bare bones that the length of time between his complaints of discrimination and the subsequent alleged retaliation renders any causal connection implausible. See Carlson v. CSX Transp., Inc., 758 F.3d 819, 828-29 (7th Cir. 2014).

Viewing the facts in the light most favorable to Smith, and drawing all inferences in his favor, the failure to promote Smith to Code Enforcement Officer could plausibly constitute the first opportunity for the City to retaliate. Additionally, viewing the Operative Complaint as a whole, Smith's allegations could suggest a pattern of antagonism against Smith following his 2015 EEOC Charge and complaints of discrimination, culminating in the adverse treatment of him in his supervisor position. See Joyner v. City of Atlanta, No. 1:16-CV-1780-TWT-LTW, 2018 WL 1442931, at *10 (N.D. Ga. Feb. 23, 2018) ("[E]ven though Plaintiff has not specified the time gap between his [protected conduct] and the adverse employment actions, the pattern of retaliatory acts he alleges makes the causal connection stronger.") adopted by 2018 WL 1427941, at *1 (N.D. Ga. Mar. 22, 2018). As such, at this stage of the proceedings, it would be premature to dismiss Smith's claims for lack of a causal connection. While the Court does not condone the vague and disjointed manner in which Smith stated his claims, the Court is nevertheless satisfied that his allegations are sufficient to state plausible claims for retaliation. See Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 & n.8 (1st Cir. 2014); Carlson, 758 F.3d at 829; El-Saba v. Univ. of S. Ala., No. 15-00087-KD-N, 2015 WL 5849747, at *15-18 (S.D. Ala. Sept. 22, 2015). Accordingly, the City's Motion to Dismiss for failure to state a claim as to the remaining retaliation claims is due to be denied.

In light of the foregoing, it is

**ORDERED:**

1. Defendant City of Atlantic Beach's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 25) is **GRANTED, in part, and DENIED, in part**.

A. The Motion is **GRANTED** to the extent the claims set forth in Counts II, IV, V, VII, VIII, X, and XI are **DISMISSED** for failure to exhaust administrative remedies.

B. Otherwise, the Motion is **DENIED.**

2. The claims set forth in the following Counts remain pending in this action: Counts I, III, VI, IX, and XII.   Defendant shall file a responsive pleading as to these Counts in accordance with Rule 12(a)(4)(A).

**DONE AND ORDERED** in Jacksonville, Florida this 12th day of February, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record